IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MEDLEY MATERIAL HANDLING CO.,

    Plaintiff,

vs.                                   No. CIV 01-454 LFG/WWD

GAF LEATHERBACK CORPORATION,
f/k/a Leatherback Industries, Inc.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant GAF Leatherback Corporation's ("GAF") Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P 12(b)(3) and Contractual Forum Selection Clause, or Alternatively to Transfer [Doc. 10]. Plaintiff Medley Material Handling Co. ("Medley") filed a response and GAF replied. The briefing was filed as a package in accord with local practice. Oral argument is not necessary; this matter may be decided on the briefs. For the reasons given below, the case will not be dismissed, but the motion to transfer venue is granted.

### Background

Medley originally filed this breach of contract action in New Mexico state court. GAF removed the case to federal court on the basis of diversity jurisdiction. Medley is incorporated in Oklahoma and has its principal place of business in that state; GAF is incorporated in Delaware and has its principal place of business in California. GAF is a wholly owned subsidiary of a company which has its principal place of business in New Jersey.



At issue in this motion is GAF's contention that the parties stipulated by contract that the proper forum for resolution of any disputes arising from their leasing arrangement would be New Jersey, and that New Jersey law would apply to any such dispute. Medley argues that when its Sales Manager signed the purchase order containing the choice of venue provision, Medley did not thereby intend to bind itself to a New Jersey forum; rather, it expected that the parties' ultimate agreement would later be embodied in a formal lease. The lease document was negotiated and drawn up but was never executed by the parties.

Medley contends that, by attaching affidavits and other evidence to its Response, it converted this motion to dismiss into a motion for summary judgment, and further that there are disputed issues of fact surrounding the parties' intentions which necessitate further discovery. The Court does not consider that this motion is converted into one for summary judgment, as the affidavits are not necessary to determination of the motion. In any case, extrinsic evidence may not be used to contradict an unambiguous contract term. Mark V, Inc. v. Mellekas, 114 N.M. 778, 782, 845 P.2d 1232, 1236 (1993); Memorial Med'l Ctr., Inc. v. Tatsch Constr, Inc., 129 N.M. 677, 12 P.3d 431, 437 (2000) ("evidence that the parties did not intend, when executing the lease, to enforce certain provisions would not be admissible").

In this case, the affidavit of Medley Sales Manager Don Keller ("Keller"), to the effect that he did not intend to be bound by the forum selection clause at the time he signed the agreement, was offered to support Medley's argument that the clause is totally ineffective, not that the clause is "reasonably and fairly susceptible of different constructions." Mark V, 114 N.M. at 783. The Court finds that the forum selection term at issue herein is unambiguous, and the additional evidence submitted with the parties' briefs need not be considered.

2

GAF formerly operated a manufacturing facility in Albuquerque, New Mexico. It arranged to lease six forklifts from Medley for use in its plant. During lease negotiations and prior to finalization of the lease agreement, GAF presented to Medley a purchase order for the six forklifts. The purchase order, which was signed by Keller on behalf of Medley, contained the following provision:

> 21. APPLICABLE LAW. The validity, interpretation and performance of this Agreement shall be governed by the laws of the State of New Jersey, without giving effect to its conflicts of laws. Seller and Buyer agree that any litigation arising hereunder or related hereto shall be litigated in the courts located in the State of New Jersey.

Although as noted above, the Court does not find that the affidavits affect the outcome of this motion, it does take note of the Keller affidavit in which he states that, while he was in the process of negotiating the lease deal with GAF representative Jonathon Hood, another GAF employee, Carol Tortorelli ("Tortorelli"), sent him a purchase order for his signature. Keller says he told Tortorelli that the purchase order was unacceptable because the parties' arrangement regarding the forklifts was supposed to be embodied in the as-yet unexecuted lease, and that she responded that the purchase order was not meant to replace or modify the lease agreement, but rather was to be used purely for internal bookkeeping purposes. Keller asserts further that, "[a]t Ms. Tortorelli's request, I signed the purchase order to indicate only that the descriptions of the Lease terms in the Purchase Order's "Product" category and the shipping dates were correct." (Ex. A to Doc. 12).

Medley alleges in its complaint that, in September 2000,[1] it delivered the six specially-

---

[1] The Complaint says "September 2001," but this is clearly a typographical error.

3

equipped forklifts to GAF. Medley had already prepared and forwarded to GAF a form of lease agreement for review by GAF's legal counsel, and it alleges that the parties had an understanding that the lease would be executed immediately after delivery of the forklifts. In its Answer, GAF denies that there was such an understanding. Medley states further in its complaint that despite its repeated demands, GAF refused to sign and return the lease documents. After paying rent on the forklifts for the months of September and October 2000, GAF failed to make any payments thereafter. Medley then sued for breach of contract, breach of the duty of good faith and fair dealing, and negligent misrepresentation.

GAF asserts in its memorandum brief that, subsequent to the execution of the purchase order and shortly after delivery of the forklifts, GAF closed its Albuquerque plant "due to unforseen circumstances." GAF states that it formally tendered the forklifts back to Medley and formally terminated the rental agreement on November 7, 2000. In its Answer, GAF denies any obligation to make payments under the leasing arrangement and contends that this dispute should be transferred to the United States District Court for the District of New Jersey, in accordance with the venue provision in the purchase order.

## Discussion

On the basis of the forum selection clause contained in the purchase order, GAF seeks to terminate the action in this forum, either by dismissal for improper venue under Fed. R. Civ. P. 12(b)(3), or under 28 U.S.C. § 1404(a) which provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Court finds that GAF's motion is well taken and that a transfer under § 1404(a) is the most appropriate resolution of this issue.

4

Section 1404(a) places discretion in the District Court to adjudicate a motion for transfer on an individualized, case-by-case basis, taking into account the two primary considerations of convenience and fairness. Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 2244 (1988); Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991). Although the Court should not unthinkingly adopt a forum selection clause, the presence of such a provision is "a significant factor that figures centrally in the district court's calculus." Stewart Organization, 487 U.S. at 29.

In Stewart, the Supreme Court noted that a forum selection clause affects consideration of both of these primary factors: It affects the fairness factor, in that the court will have to examine the parties' relative bargaining power at the time they designated the forum; and, assuming the bargaining power was equal, the forum selection clause will also affect consideration of the convenience factor, in that the court must take into account the fact that the parties expressed a preference for a particular venue and presumably took into account in doing so the question of convenience. "The flexible and individualized analysis Congress prescribed in § 1404(a) thus encompasses consideration of the parties' private expression of their venue preferences." Id., 487 U.S. at 29-30.

On the other hand, after Stewart, the presence of a forum selection clause is not dispositive. The resisting party may avoid it by showing that "the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 957 (10th Cir. 1992). This is a heavy burden, and one which Medley has failed to carry in this case, as discussed below.

5

Other factors a court should consider when faced with a motion to transfer under § 1404(a) include such things as the plaintiff's choice of forum, accessibility of witnesses and evidence, relative advantages and obstacles to a fair trial, difficulties that may arise from congested dockets, the advantage of having a local court determine questions of local law, relative financial strengths of the parties, and "all other considerations of a practical nature that make a trial easy, expeditious and economical." Chrysler Credit Corp., at 1516; Stewart v. Dean-Michaels Corp., 716 F. Supp. 1400, 1403 (N.D. Ala. 1989).

Setting aside for the moment the question whether the forum selection clause in this case was fairly bargained-for, and assuming it is valid, the Court concludes that the convenience factor weighs in favor of enforcing the clause. The parties are assumed to have calculated the relative convenience of different venues at the time they concluded their agreement. As the Court pointed out in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 17-18, 92 S. Ct. 1907, 1917 (1972), "[w]hatever 'inconvenience' Zapata would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting."

As noted above, Medley is an Oklahoma corporation with its principal place of business in that state. GAF, a Delaware corporation with its principal place of business in California, formerly had a manufacturing plant in New Mexico which has since closed, and the forklifts were leased for use in this plant. GAF is a wholly-owned subsidiary of a company whose principal place of business is New Jersey. The Court does not discern that any of these venues is more or less convenient, on balance, than another. Any forum would require that out-of-District witnesses and corporate representatives travel for purposes of discovery and trial. The New Jersey forum is clearly more convenient for GAF than for Medley, but that does not make it an unreasonable

6

choice. The fact that the venue of choice is the home base of one of the parties is a valid reason for upholding that choice, even if it is less convenient for the other party. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595, 111 S. Ct. 1522, 1528 (1991); Smith v. Professional Claims, Inc., 19 F. Supp. 2d 1276, 1281 (M.D. Ala. 1998) ("South Carolina is the principal place of business for the corporate defendant . . . this choice of forum is reasonable and comports with fundamental fairness").

Medley must show more than some inconvenience. Rather, it must show that "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." M/S Bremen, 407 U.S. at 18. Medley has not shown that he will be deprived of his day in court if forced to litigate in New Jersey. The United States District Court for the District of New Jersey is not, as GAF points out, a "remote alien forum," as described in M/S Bremen, 407 U.S. at 17:

> We are not here dealing with an agreement between two Americans to resolve their essentially local disputes in a remote alien forum. In such a case, the serious inconvenience of the contractual forum to one or both of the parties might carry greater weight in determining the reasonableness of the forum clause. The remoteness of the forum might suggest that the agreement was an adhesive one, or that the parties did not have the particular controversy in mind when they made their agreement; yet even there the party claiming should bear a heavy burden of proof.

With regard to the fairness factor, Medley cannot claim a lack of equal bargaining power. Both parties were in business and their employees were presumably experienced in negotiating leasing contracts of the sort at issue herein. Medley Sales Manager Keller signed the purchase order, prepared by GAF, on Medley's behalf and thereby bound his employer to the terms of the agreement. On the face of the purchase order, directly above Keller's signature, appears the

7

following statement: "This offer to purchase is expressly subject to the terms and conditions on the face and reverse sides hereof and the vendor's unconditional acceptance thereof. If the vendor makes any modifications to this offer, it shall be deemed revoked and GAF shall have no obligation with respect thereto." The choice of venue clause appears on the reverse side.

Keller states in his affidavit that he never intended to bind Medley to the venue-setting terms of the purchase order but merely signed the document at the urging of GAF employee Tortorelli, who assured him it was only for internal bookkeeping purposes. He says that he told Tortorelli that the purchase order was unacceptable, because the parties' understandings were meant to be embodied in the as-yet unexecuted lease agreement, and Tortorelli induced him to sign it by her statement that the purchase order was not meant to replace the lease agreement or modify it in any way. Even if the Court were to consider this evidence and accept this statement as true, Medley does not dispute that Keller did indeed sign the document on Medley's behalf, and there was clear notice on its face that the terms and conditions on the reverse side were binding on the signatory. As GAF points out, the language of the purchase order is directed toward "the vendor" as a separate party and clearly contemplates and explicitly states that upon signing, the signatory would be bound by the terms on the reverse side.

Thus, Keller had notice that the document was more than an internal bookkeeping device but rather constituted a contract between Medley and GAF, imposing benefits and obligations on both parties. Keller could have questioned the forum selection clause at the time he signed the purchase order and could have insisted that it be eliminated it from the document, but he did not do so. Medley does not argue, and there is no indication, that Keller is not a knowledgeable businessman nor that he was somehow coerced or tricked into signing a document which he didn't

8

understand, by a party with superior bargaining power.

Even where the party resisting the transfer complains that it had little time to review the language of a forum selection clause before signing it, the clause will be enforced unless there was "overreaching" on the part of the other party. Excell, Inc. v. Sterling Boiler & Mechanical, Inc., 106 F.3d 318, 321 (10th Cir. 1997). "A conclusory statement that the plaintiffs never agreed to contract over such a clause [*i.e.*, a forum selection clause] is not sufficient to negate the effect of a term in the agreements signed" by the plaintiff. Smith v. Professional Claims, Inc., 19 F. Supp. 2d 1276, 1280 (M.D. Ala. 1998). In addition, even if this were seen as a contract of adhesion, that fact alone would not render the forum selection clause unenforceable. Id.; Carnival Cruise Lines, 499 U.S. at 593-94.

A written lease for the forklifts was negotiated by Medley and GAF, but it was never executed and neither party has presented to the Court any other document which would govern their respective duties and obligations with regard to their leasing arrangement. The purchase order, being the only written embodiment of the parties' agreement concerning the six forklifts, therefore governs their relationship. The choice of venue provision therein is presumptively valid under M/S Bremen and Riley and, as noted above, Medley has not demonstrated that its enforcement would be unfair, unreasonable or unjust.

GAF also argues that the inclusion in Medley's complaint of causes of action sounding in tort does not prevent application of the venue selection clause. The Court agrees. The tort claims at issue here, breach of the duty of good faith and fair dealing, and negligent misrepresentation, are inextricably entangled with the contract issues and fall within the contract language, "any litigation arising hereunder or related hereto shall be litigated in the courts located in the state of

9

New Jersey." [Doc. 2, Ex. A, at ¶ 21]. *See*, <u>Smith v. Professional Claims</u>, at 1281-82; <u>Lambert v. Kysar</u>, 983 F.2d 1110, 1121-22 (1st Cir. 1993).

### Order

IT IS THEREFORE ORDERED that Defendant GAF's motion to transfer this case under 28 U.S.C. § 1404(a) is granted. and the case will be transferred to the United States District Court for the District of New Jersey.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge